**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------
**MARIA C. MEJIA,**

                **Plaintiff,**              16-cv-6513 (JGK)

        - v.-                     **MEMORANDUM OPINION AND ORDER**

**NANCY BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**
------------------------------------
**JOHN G. KOELTL, District Judge:**

    The plaintiff, Maria Cleofe Mejia, has brought this action to seek review of a final decision of the defendant, the Commissioner of Social Security (the "Commissioner"), that the plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The plaintiff filed applications for DIB and SSI on September 4 and 11, 2013, respectively, alleging that she became unable to work on April 1, 2009. The plaintiff alleged the following impairments: lumbar degenerative disc disease and spondylosis; left knee meniscus tear; fibromyalgia; depressive disorder; anxiety disorder; ulcerative colitis; and other impairments. (Tr. 18-20). Her claims were initially denied on December 13, 2013. She filed a written request for a hearing on January 16, 2014, and the Administrative Law Judge ("ALJ") denied the plaintiff's claims on April 16, 2015. After the Appeals Council declined review on

July 29, 2016, the decision of the ALJ became the final decision of the Commissioner.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

On appeal, the plaintiff concedes that the Commissioner properly denied her applications for the period before September 4, 2012. The final decision is accordingly affirmed as to that period. However, the petitioner maintains that the Commissioner erred in failing to grant her applications as of the amended onset date of September 4, 2012. See Dkt. 9.

**I.**

The administrative record contains the following facts.

The plaintiff was born on August 9, 1964, and attended school through the ninth grade in the Dominican Republic. (Tr. 56, 150). From 2002 through 2009, she worked as a home health aide. (Tr. 56, 186). The record indicates that the plaintiff did not earn income between 2009 and 2013. (Tr. 167). For eight months in 2013, the plaintiff was paid to care for children for four hours per day. (Tr. 56-57). The plaintiff lives with her daughter. (Tr. 61, 158).

On October 13, 2011, the F.E.G.S. WeCare program interviewed and physically examined the plaintiff. (Tr. 211-36). F.E.G.S. physician Dr. Zobidatte Moussa found that the plaintiff

was 61 inches tall, weighed 198 pounds, and had a body mass index of 37.41. (Tr. 224). Dr. Moussa found that the plaintiff had "slight right foot sole tenderness," but concluded that the examination was otherwise normal. (Tr. 24, 229-30).

On September 4, 2012, the plaintiff underwent a lumbar MRI that revealed degenerative disc disease and left lateral disc herniation. (Tr. 266-67).

Dr. Sangita Shah treated the plaintiff from at least 2010 through April 1, 2013. (Tr. 275, 836-39, 864). On October 12, 2012, Dr. Shah opined that the plaintiff was unable to work because of her medical conditions (back pain, neck pain, shoulder pain, ankle pain, and diabetes, the last of which was diagnosed in August 2012). (Tr. 275). Dr. Shah noted that the plaintiff complained of "constant body aches, weakness, fatigue and swelling." Dr. Shaw also opined that the plaintiff's conditions "inhibit ability to work and work may exacerbate her conditions." (Tr. 275). He noted that the plaintiff was under the care of many specialists. (Tr. 275).

On April 23, 2013, the plaintiff began seeing Dr. Mihail Medvedovsky. (Tr. 434). Dr. Medvedovsky referred the plaintiff to Dr. Latha Thanneer, a cardiologist. (Tr. 439). On May 16, 2013, the plaintiff underwent an MRI on her left knee, which revealed a tear of the anterior horn of the lateral meniscus and advanced lateral patellofemoral arthropathy. (Tr. 424). On June

3

24, 2013, Dr. Thanneer found that the plaintiff had "no cardiac limitations for physical activity and was encouraged to do exercise." (Tr. 401).

On September 10, 2013, Dr. Medvedovsky submitted a Multiple Impairment Questionnaire in which he opined that, in an eight-hour day, the plaintiff can sit for 5 hours and stand/walk for 3 hours. (Tr. 524, 526). Furthermore, Dr. Medvedovsky noted the plaintiff's complaints about her left knee and lumbosacral area as a source of daily pain, and that the plaintiff can never lift or carry more than 10 pounds. (Tr. 525, 527).

On November 5, 2013, Dr. Thukral conducted an internal medical examination of the plaintiff at the request of the Social Security Administration (the "SSA"). (Tr. 871-875). The plaintiff self-reported her symptoms and diagnoses, which included bilateral knee pain, lower backache, hypertension, asthma, and other impairments. (Tr. 874). Dr. Thukral opined that the plaintiff had "no limitations for sitting, pulling, or pushing, but has mild limitations for standing (for a long time), bending, lifting, carrying...due to bilateral knee pain and lower backache." (Tr. 874). Moreover, he opined that the plaintiff needed to avoid smoke, dust, and other respiratory irritants. (Tr. 874).

On September 4, 2013, the plaintiff filed an application with the SSA seeking DIB and on September 11, 2013, the

plaintiff filed another application seeking SSI. (Tr. 15). The plaintiff claimed that her alleged disability began on April 1, 2009. (Tr. 15). The plaintiff's claims were initially denied on December 13, 2013. (Tr. 98). On January 16, 2014, the plaintiff filed a written request for a hearing before an ALJ. (Tr. 15).

On August 21, 2014, the plaintiff began receiving psychiatric services at the Jewish Board for Family and Children's Services. (Tr. 911). On December 3, 2014, the plaintiff underwent a psychiatric evaluation, where she self-reported that her ulcerative colitis made it difficult for her to eat many things. (Tr. 914). On February 3, 2015, in an Evaluation and Management Assessment, the plaintiff self-reported that she had undergone an endoscopy and colonoscopy six months before, and that she was diagnosed with ulcerative colitis and gastritis. (Tr. 936).

On September 3, 2014, the plaintiff underwent a colonoscopy. (Tr. 908). Aside from medium-sized non-bleeding internal hemorrhoids, the digital rectal exam was normal, although the presence of stool prevented visualization. (Tr. 908). Dr. Medvedovsky recommended a repeat colonoscopy in six weeks for screening purposes. (Tr. 908).

The hearing before the ALJ occurred on March 4, 2015. (Tr. 53). The plaintiff appeared with an attorney and spoke through an interpreter. (Tr. 53). The plaintiff testified that she had

problems with her digestion, and that she had lost twenty pounds in under a year. (Tr. 57-58). She testified about her depression, and the pain in her back, knee, hip, neck, arm, and leg. (Tr. 58).

On April 16, 2015, the ALJ issued his decision denying the plaintiff benefits. (Tr. 15-29). The ALJ evaluated the plaintiff's claims for SSI and DIB pursuant to the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (Tr. 16). First, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the date of her alleged disability, April 1, 2009. (Tr. 17).

Second, the ALJ found that the plaintiff had the following severe impairments: lumbar degenerative disc disease and spondylosis; left knee meniscus tear; fibromyalgia; depressive disorder; and anxiety disorder. (Tr. 18). However, the ALJ found that the plaintiff's colitis was not a severe impairment based on the benign colonoscopy results and the absence of any gastroenterologist treatment records in the record. (Tr. 20).

Third, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments entitling the plaintiff to benefits in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (Tr. 20).

Fourth, the ALJ assessed the plaintiff's residual functional capacity ("RFC") and found that the plaintiff retained the capacity to perform medium work, meaning that she is able to "lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." (Tr. 22). The ALJ however found that the plaintiff was limited to work with little or no judgment. (Tr. 22). Although the ALJ noted that there was medical evidence of the plaintiff's lumbar spine impairment and knee impairment, he accorded the opinions of Dr. Shah and Dr. Medvedovsky regarding the plaintiff's limitations "little weight" because the doctors made a determination of the plaintiff's disability, which is a finding reserved to the Commissioner. The ALJ also discounted the opinions of Dr. Shah because they were not supported by documentation as to how the plaintiff's conditions affected her functioning. The ALJ also accorded little weight to Dr. Medvedovsky's opinions with respect to the limitations on the plaintiff's functioning because they were "quite conclusory." (Tr. 25). Nevertheless, the ALJ found that the plaintiff could not perform her past relevant work as a home health aide. (Tr. 27).

Fifth, the ALJ considered the plaintiff's vocational factors and her RFC, and applied the Commissioner's medical-vocational guidelines ("the grids"). (Tr. 28). The ALJ

ultimately concluded that the plaintiff was not disabled within the meaning of the Social Security Act and denied the claims for DIB and SSI benefits. (Tr. 28).

The plaintiff appealed to the Appeals Council. (Tr. 24). The Appeals Council found no reason for review, which it declined. (Tr. 1). The Appeals Council considered new evidence that was not before the ALJ: Dr. Edward Brown, Jr.'s medical records, dated from July 29, 2015 to October 9, 2015, and a medical source statement from Dr. Rupa Natarajan dated June 30, 2016. (Tr. 2). The Appeals Council determined that the newly submitted evidence was not germane to the ALJ's decision because it concerned matters relevant to the period after the date of the ALJ's decision. (Tr. 2). The ALJ's determination became the final decision of the Commissioner. This appeal followed.

## II.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. §§ 405(g), 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (citations omitted); see also Burton-Mann v. Colvin, No. 15-CV-7392 (JGK), 2016 WL 4367973, at *3 (S.D.N.Y. Aug. 13, 2016). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

8

Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Karle v. Colvin, No. 12-CV-3933 (JGK)(AJP), 2013 WL 4779037, at *1 (S.D.N.Y. Sept. 6, 2013).

The definition of "disabled" is the same for DIB and SSI. See Barnhart v. Walton, 535 U.S. 212, 214 (2002); see also Mitchell v. Colvin, No. 14-CV-04154 (JGK), 2015 WL 5306208, at *4 (S.D.N.Y. Sept. 10, 2015). A claimant seeking DIB or SSI is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A); accord 42 U.S.C. § 1382(c)(3)(A). Remand is particularly appropriate where an ALJ has failed to develop the record sufficiently and where a remand for further findings would help to assure the proper disposition of a claim. See Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004); see also Burton-Mann, 2016 WL 4367973, at *3.

There is a five-step framework to evaluate disability claims set out in 20 C.F.R. §§ 404.1520 and 416.920. In essence, "if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations]

9

that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if there is not another type of work the claimant can do." Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (citations omitted); see also, e.g., Selian v. Astrue, 708 F.3d 409, 417–18 (2d Cir. 2013); Burton-Mann, 2016 WL 4367973, at *4.

The claimant must first establish a disability under the Act (the framework's first four steps). See Burgess, 537 F.3d at 120. If the claimant satisfies those steps, the Commissioner must establish that, given the claimant's RFC, there is still work the claimant could perform in the national economy (the framework's fifth step). See id. If a claimant cannot perform work in the national economy, then the claimant's condition meets the Act's definition of disability. See id.; see also Burton-Mann, 2016 WL 4367973, at *4.

### III.

#### A.

"[T]he 'treating physician rule' directs the ALJ to give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence." Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (summary order) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.

10

2004) (per curiam)). "When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Even if a treating physician's opinion is not afforded controlling weight, the Commissioner applies various factors in determining the weight to give the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Moreover, the Commissioner is required to explain the weight it gives to the opinion of a treating physician. See id. §§ 404.1527(c)(2), 416.927(c)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Dyson v. Astrue, No. 2:09-CV-3846, 2010 WL 2640143, at *5 (E.D. Pa. June 30, 2010) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)); see also Burton-Mann, 2016 WL 4367973, at *5. A district court may remand without hesitation "when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." Morgan, 592 F. App'x at 50; see also Mitchell, 2015 WL 5306208, at *11.

   Here, the ALJ accorded "little weight" to the plaintiff's treating sources for lumbar spine and knee impairments. This was legal error.

The ALJ discounted Dr. Shah's treating physician's medical report because the ALJ found that the report pertained to the determination of disability, and because there was no documentation of how the claimant's conditions affected her functioning. Moreover, the ALJ found that there was no medical evidence to support the statement in the report that the claimant was seeking treatment from a rheumatologist. (Tr. 25).

The ALJ discounted Dr. Medvedovsky's treating physician opinions because they pertained to the issue of disability and were "quite conclusory," and because there was no evidence that the plaintiff had received treatment for her left knee, although the plaintiff testified to receiving injections and physical therapy for her knees. (Tr. 23, 25).

Although the determination of disability is an issue reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), the medical opinions of Dr. Shah and Dr. Medvedovsky with respect to the plaintiff's lumbar spine and knee impairments were more than simple conclusory statements of disabilities. They were opinions as to impairments that were supported by objective findings. MRIs from September 2012 and May 2013, respectively, revealed that the plaintiff had degenerative disc disease, left lateral disc herniation, a lateral meniscus tear and advanced patellofemoral arthropathy. (Tr. 266-67, 424). The ALJ admitted that "a review of the

medical records [revealed] evidence of lumbar spine impairment" and that "objective medical imaging exists in regard to the left knee." (Tr. 23, 25). In view of the demonstrated objective conditions of a torn meniscus and degenerative discs leading to back pain, the ALJ did not have "good reasons" to accord "little weight" to the findings of the treating physicians with respect to the lumbar spine and knee impairments. Dr. Shah found that the plaintiff's conditions, including back pain, inhibited her ability to work and that work may have exacerbated her condition. Dr. Medvedovsky opined that the plaintiff could never lift or carry more than ten pounds. The findings of the treating doctors were inconsistent with the ALJ's finding that the plaintiff had the RFC to do medium work and the ALJ did not give good reasons for rejecting their opinions. Indeed, the Commissioner conceded at argument on the current motion that the ALJ's finding that the plaintiff had the RFC to do medium work was inconsistent with the finding of Dr. Thukral, the consultative examiner, that the plaintiff had mild limitations for standing (for a long time), bending, lifting and carrying due to bilateral knee pain and lower backache. (Tr. 874). Remand is appropriate in this case for the ALJ to reconsider the plaintiff's RFC determination.

**B.**

In a proceeding to determine whether a claimant is disabled, the ALJ has an affirmative duty to develop the administrative record. See Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citations omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when . . . the claimant is represented by counsel." See Avila v. Astrue, 933 F. Supp. 2d 640, 653 (S.D.N.Y. 2013) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)); see also Burton-Mann, 2016 WL 4367973, at *4.

In particular, with respect to treating physician records, the governing statute provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make" the disability determination before evaluating medical evidence obtained from any other source on a consultative basis. 42 U.S.C. § 423(d)(5)(B); accord 42 U.S.C. § 1382c(3)(H)(i); see also Rosa, 168 F.3d at 79–80 (holding in a DIB case that the ALJ

erred in failing to satisfy his duty to develop the record where he did not obtain further treatment records from a treating physician and other treatment sources including a physical therapist and orthopedist, before relying on the opinion of consulting physicians); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (concluding that there was a serious question as to whether the ALJ satisfied his duty to develop the record in an SSI case); Torres v. Comm'r of Soc. Sec., No. 13-CV-730 (KBF), 2014 WL 406933, at *4–5 (S.D.N.Y. Feb. 3, 2014) (holding that the ALJ failed to develop the record where he failed to follow up after asking for treatment notes and functional analysis from an identified primary treating physician); see also Burton-Mann, 2016 WL 4367973, at *4.

The plaintiff contends that the ALJ committed legal error by failing to develop the record as required. Specifically, the plaintiff argues that the ALJ did not obtain records and reports from the plaintiff's treating physician regarding the severity of her ulcerative colitis, and how it affected her RFC.

The plaintiff self-reported that she was diagnosed with ulcerative colitis and gastritis after a colonoscopy and endoscopy. (Tr. 911, 914, 936, 939). The plaintiff complained about uncontrolled diarrhea as a result. (Tr. 914, 939). However, the plaintiff underwent a colonoscopy in December 2014 that returned negative results. (Tr. 908). The ALJ did not make

15

further inquiries or contact the treating physician to ascertain the treating physician's opinions and analyses with respect to the apparent inconsistencies in the records and to obtain the treating physician's diagnosis. Instead of satisfying the ALJ's affirmative duty to develop the record, the ALJ focused on the absence of a gastroenterologist's treatment records in the record and the apparently normal colonoscopy. (Tr. 20). The ALJ's failure to make at least reasonable efforts to obtain those records and reconcile any ambiguities was legal error. See Rosa, 168 F.3d at 80 (holding that failure to close the gaps in the record constituted legal error); see also Moreira v. Colvin, No. 13-CV-4850 (JGK), 2014 WL 4634296, at *7 (S.D.N.Y. Sept. 15, 2014).

The ALJ's failure to satisfy his affirmative duty to develop the record with respect to the allegations of colitis and gastritis is an additional reason for remand to develop the record. See Johnson v. Bowen, 817 F.2d 983, 987 (2d Cir. 1987); Taveras v. Apfel, No. 97-CV-5369 (JGK), 1998 WL 557587, at *4-5 (S.D.N.Y. Sept. 2, 1998); see also Burton-Mann, 2016 WL 4367973, at *5.[1]

---

[1] It is unnecessary to reach the plaintiff's argument that the ALJ erred by failing to obtain the testimony of a vocational expert in view of the non-exertional limitations on the plaintiff's RFC. It is unclear what RFC will be found after the record is properly developed on remand. The Commissioner should

**C.**

The Appeals Council is obligated to consider "new and material" evidence that "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); Patterson v. Colvin, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014). The Court may remand to the Commissioner to consider new evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see Patterson, 24 F. Supp. 3d at 372. The Court of Appeals for the Second Circuit has summarized the three-part showing required by this provision as follows:

> [A]n appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991) (internal citations and quotation marks omitted).

---

assure that any further hearing on remand complies with all legal requirements.

17

In this case, Dr. Brown's July 29, 2015 letter is neither material nor relevant to the ALJ's assessment of the plaintiff's applications.[2] Dr. Brown found that the plaintiff's cardiovascular examination was "normal," and recommended that the plaintiff exercise to relieve her complaints of chest discomfort. (Tr. 35-37). That recommendation was consistent with Dr. Thanneer's cardiovascular findings from June 2013 that the plaintiff had "no cardiac limitations for physical activity and was encouraged to do exercise." (Tr. 401). There is no reasonable probability that Dr. Brown's letter could have affected the ALJ's assessment of the plaintiff's applications. At best, the matters discussed may implicate a new claim for disability. The Appeals Council did not err in rejecting the purported new evidence.

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the plaintiff's cross-motion for judgment on the pleadings is **granted in part and denied in part**, and the defendant's cross-motion is **granted in part and denied in part**. The Commissioner's decision is **affirmed in part and**

---

[2] On appeal, the plaintiff does not argue that the medical source statement by Dr. Rupa Natarajan constitutes new evidence that warrants remand.

**vacated in part** and the case is **remanded to the Commissioner** for further proceedings in accordance with this opinion.

The Clerk is directed to enter judgment and to close this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 28, 2017**          _____/s/_____
                               **John G. Koeltl**
                       **United States District Judge**